IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02879-WJM-MEH

DAVID A. NORIEGA,

    Plaintiff,

v.

PAUL PELLETIER, M.D.,
ERIC LOVANAS, M.D., and
HOFFMAN, M.D., in their individual capacities,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff David A. Noriega, a pro se litigant, alleges violations of his constitutional rights by Defendants. ECF 27 at 4. He brings claims pursuant to 42 U.S.C. § 1983 in his Second Amended Complaint ("SAC") against Defendants in their individual capacities for violations of the Eighth Amendment. *Id*. Before the Court is Defendants' motion to dismiss ("Motion"). ECF 58. District Judge Martinez referred the Motion, and the Motion is fully briefed.[1] Court finds that oral argument would not materially assist the Court in its adjudication. As set forth below, this Court respectfully recommends granting the Motion.

---

[1] Plaintiff filed a "response" to Defendants' reply brief. ECF 76. Because the Federal Rules of Civil Procedure and the Local Rules of this District do not provide for a sur-reply or sur-response, the Court did not consider Plaintiff's filing for this Recommendation.

## FACTUAL BACKGROUND

The following are factual allegations (as opposed to legal conclusions, bare assertions, or conclusory allegations) made by Plaintiff in his SAC and its attached exhibits, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was a pretrial detainee in custody of the Denver Sheriff's Department, who received treatment at Denver Health from Defendants from July 14, 2020 to September 3, 2020. ECF 27 at 4. On July 5, 2020, Plaintiff received radiology imaging from Olivia Serigano, M.D. regarding pain in his left foot. *Id*. at 12. This radiology report indicates that Plaintiff's foot had a suspected fracture, a mild displacement, and was rotated. *Id*. It then states there was soft tissue swelling and a fragment arising from the navicular bone. *Id*. Plaintiff claims that Dr. Serigano had a surgery treatment plan for this injury. *Id*. at 4. This surgery plan, or any mention of it, is absent from the provider notes of subsequent treating physician Defendant Eric Lavonas, M.D. (Exhibit One) or Dr. Serigano's imaging report (Exhibit Two). *Id*. at 11-12.

Days after meeting with Dr. Serigano, Plaintiff returned to Denver Health for complaints of left foot pain. *Id*. at 4. Defendants Dr. Lavonas and Paul Pelletier, M.D. both treated Plaintiff during this visit. *Id*. Plaintiff again underwent imaging, which indicated that his left foot was mildly displaced, and the fracture had started to callus. *Id*. at 14. Otherwise, the alignment was normal. *Id*. Plaintiff claims Dr. Lavonas discussed a surgical treatment plan to have pins surgically put in Plaintiff's bone to have it "held and realigned" for proper healing. *Id*. at 4. Plaintiff alleges Dr. Lavonas knew of Dr. Serigano's "surgery treatment plan" while attending to Plaintiff but did not put Plaintiff "back in her hands for surgery." *Id*. Dr. Lavonas discharged Plaintiff at the conclusion of this visit. *Id*. at 5. Plaintiff contends that he was discharged "without any ambulatory assistance

or mobile device." *Id*. Exhibit 13 from the SAC indicates that Dr. Lavonas prescribed Plaintiff a "cam boot" for his fracture. ECF 27-2 at 3. Plaintiff asserts Dr. Pelletier discharged him without the "cam boot" and never scheduled the surgery date for the treatment plan that was discussed with Dr. Lavonas. ECF 27 at 5. The notes displayed in Exhibit One state that Plaintiff did not appear for surgery the week prior. *Id*. at 11.

Plaintiff returned to Denver Health on August 3, 2020 where he received treatment from Defendant Hoffman, M.D. *Id*. at 6. Plaintiff explained to Dr. Hoffman that his left foot pain ranged from an 8/10 to a 10/10, but there were no other associated symptoms. *Id*. Plaintiff was prescribed to wear a "cam boot" for three weeks, using crutches if needed, and could then transition to wearing athletic shoes. *Id*. at 7, 17. In addition to the "cam boot" Plaintiff was told to elevate his foot and take Tylenol or NSAIDs for pain relief. *Id*. at 17. Plaintiff received additional radiologic imaging during this visit, which indicated that the fracture increased callus formation and there was a "closed fracture of left foot." *Id*. at 18. Otherwise, his foot's condition was unchanged. *Id*.

On August 31, 2020, Plaintiff requested muscle relaxers, Vicodin, or some alternative for his foot pain, as ibuprofen was hurting his stomach and he had pain in his foot. *Id*. at 20. No other symptoms were reported to staff. *Id*.

Plaintiff was then seen by medical staff from the Denver Sheriff's Department on September 11, 2020. *Id*. at 21. He reported to the responding staff that he was scheduled for surgery on September 15, 2020. *Id*. According to Exhibit Eleven, Plaintiff had a steady gate and slight swelling in his foot. *Id*. No other symptoms were disclosed. *Id*. Plaintiff was given crutches until he was cleared by a doctor. *Id*.

In the SAC, Plaintiff claims that Defendants failed to give Plaintiff treatment for his condition, *id*., that he never received "adequate medical care," *id*. at 5, and Defendants chose to

3

ignore his condition, *id*. Plaintiff contends that through these acts, Defendants caused his bone to fuse irregularly. *Id*. at 4. In sum, Plaintiff claims that these actions by Defendants were in violation of the Eighth Amendment. *Id*. at 7.

## **LEGAL STANDARDS**

### I.     **Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

4

Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## II.     Treatment of Pro Se Plaintiff's Complaint

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and

sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## ANALYSIS

Plaintiff alleges deliberate indifference by failing to treat his diagnosed condition. He brings his claims against all Defendants in their individual capacities. ECF 27 at 2-4. Defendants seek dismissal of Plaintiff's claims, asserting qualified immunity. ECF 58. For the foregoing reasons, the Court respectfully recommends granting the Motion.

Plaintiff asserts a violation of the Eighth Amendment, which protects against cruel and unusual punishment. U.S. Const. amend. VIII. The Eighth Amendment encompasses medical treatment for inmates and incarcerated persons, requiring state officials to administer medical attention for incarcerated individuals. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Eighth Amendment violations occur where there was deliberate indifference, on the part of state officials, to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 829 (1994). To show deliberate indifference, a plaintiff must prove an objective and a subjective prong. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective prong is met if a plaintiff can show that the medical condition was "sufficiently serious." *Id*. (quoting *Farmer*, 511 U.S. at 834). A medical condition is sufficiently serious when diagnosed by a physician as requiring treatment, or alternatively, "the need is so obvious that a lay person could recognize the need for a doctor's attention." *Id*. (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999)). The subjective prong is satisfied when a plaintiff shows that an official knew of, and subsequently disregarded, a risk to the incarcerated person's health or safety. *Id*. (quoting *Farmer*, 511 U.S. at 837). A plaintiff's

disagreement with officials regarding the course of treatment does not satisfy the subjective prong. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). The subjective prong is not satisfied by the exercise of medical judgments unless there is some "extraordinary degree of neglect." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). Medical judgments are construed as "decisions as whether to consult a specialist or undertake additional medical testing." *Id*. "[H]owever, 'inadvertent failure to provide adequate medical care' is not enough, nor does 'a complaint that a physician has been negligent in diagnosing or treating a medical condition . . . state a valid claim of medical mistreatment under the Eighth Amendment.'" *Id*. at 1230 (quoting *Estelle*, 429 U.S. at 105-06).

The Tenth Circuit recognizes deliberate indifference of prison medical care in several contexts. *Id*. at 1231. The court recognized that "failing to treat a serious medical condition properly" may constitute deliberate indifference. *Id*. (quoting *Sealock*, 218 F.3d at 1211). It acknowledged that "preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may also constitute deliberate indifference. *Id*. In *Self*, the court found that medical personnel were obligated to provide "a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness." *Id*. at 1233. Deliberate indifference has been recognized by the Tenth Circuit where medical personnel refused diagnosis or assessment of an inmate's condition. *Mata v. Saiz*, 427 F.3d 745, 752.

I. **Deliberate Indifference Claim**

All Defendants assert qualified immunity on the claims against them. ECF 58. Qualified immunity shields physicians when they are under contract with the state to provide medical services to inmates and undertook their duties to treat an inmate. *West v. Atkins*, 487 U.S. 42, 54

(1988). When deciding a motion to dismiss based on qualified immunity, courts analyze the defendant's conduct as alleged in the complaint. *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). Qualified immunity serves as an affirmative defense that "creates a presumption that the defendant is immune from suit." *Id*. (quoting *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)). A plaintiff can overcome this presumption by showing both (1) the defendant's actions were in violation of some constitutional right, and (2) that was clearly established during the alleged conduct. *Id*. (citing *Thomas*, 765 F.3d at 1194). Here, the Court will begin by analyzing whether there was a constitutional violation.

Examining the subjective component, the pleaded facts do not show that Defendants consciously disregarded known risks to Plaintiff's health. The circumstances in the SAC suggest otherwise. Plaintiff claims that Defendants were not allowing him to receive adequate medical care, instead choosing to ignore him. Yet, there are no facts suggesting this. All Defendants ordered radiology imagery of Plaintiff's left foot to understand his condition. Defendants not only examined the imagery but attempted to physically examine Plaintiff's foot to better understand his complaints of pain. From these examinations, all Defendants gave treatment of some kind. Plaintiff was prescribed a "cam boot" and crutches and told to elevate his foot and take oral medication for his pain and to help his foot heal. He was advised that he could transition to athletic shoes three weeks after re-prescription of the "cam boot" by Dr. Hoffman. Dr. Lavonas suggested Plaintiff reestablish care with an orthopedic physician. ECF 27-2 at 3. Defendants acknowledged Plaintiff's nonspecific symptoms of foot pain, treating him in various ways.

As previously stated, the Tenth Circuit in *Self* held that medical personnel need to provide care that is consistent with the inmate's symptoms. *Id*. at 1233. There, the defendant physician did

8

not act with deliberate indifference, because the plaintiff's reported symptoms were nonspecific and could not have obviously pointed to the medical condition at issue in that case. *Id*. at 1235. Here, the Defendants were similarly situated, as there were complaints of nonspecific pains in Plaintiff's foot. Plaintiff's pains could not have reasonably pointed to a lifelong limp or deformity. Plaintiff merely alleges that surgery was the only proper course of treatment, and that Defendants did not provide adequate medical treatment. Again, matters of medical judgment, such as decisions whether certain courses of treatment are appropriate, are not grounds for actionable claims under the Eighth Amendment. *Estelle*, 429 U.S. at 107 (deciding that a medical decision to use some forms of treatment instead of others is not a constitutional violation).

As another example, in *Mata*, a defendant's refusal to assess plaintiff's chest pains was a conscious disregard of his health as there was established protocol regarding how to address inmate chest pain which that defendant chose to ignore. *Mata*, 427 F.3d at 758. Deciding to forgo taking plaintiff's blood pressure or conducting a cardiac work-up, that defendant was found to have acted with deliberate indifference. *Id*. In the present case, Defendants did not refuse care or ignore protocol. Defendants had even recommended Plaintiff establish care with an orthopedic physician or podiatrist to receive additional care. ECF 27-2 at 3. The facts from the SAC simply do not demonstrate any instances in which he was ignored or refused treatment. At most, there may be medical negligence; however, medical negligence does not give rise to deliberate indifference. *Estelle*, 249 U.S. at 106.

Plaintiff claims Defendants acted in violation of the Eighth Amendment by failing to provide adequate medical treatment. However, the record establishes otherwise. Defendants chose a different course of treatment than the one preferred by Plaintiff: foot surgery with pin insertion. As this case concerns only a difference of medical judgment between Defendants and Plaintiff,

9

Plaintiff's allegations do not plausibly state a claim for a violation of a constitutional right. *Callahan*, 471 F.3d 1160 Therefore, Defendants are entitled to qualified immunity.[2]

## II. Medical Malpractice Claim

Liberally construed, Plaintiff's fourth response brief appears to claim medical malpractice or negligence. ECF 69. Nonetheless, any such claim is absent from Plaintiff's SAC and is not properly asserted. Even if such a claim was properly pleaded, Plaintiff did not comply with Colorado statutory law in pursuing a medical malpractice claim.

Colorado requires plaintiffs to file a certificate of review for actions concerning allegations of professional negligence. Colo. Rev. Stat. § 13–20–602(1)(a). In accordance with Section 13-20-602, the certificate of review requires "(1) he or she has consulted an expert; (2) the expert has reviewed the relevant information and has concluded that the plaintiff's claim does not lack substantial justification; and (3) the expert is competent and qualified to opine as to the negligent conduct alleged." *RMB Servs., Inc. v. Truhlar*, 151 P.3d 673, 675 (Colo. App. 2006). A failure to provide the necessary materials will result in dismissal of the complaint. Colo. Rev. Stat. § 13-20-602(4). Liberally construing Plaintiff's SAC, Plaintiff failed in this requirement and any malpractice claim must be dismissed.

Even had Plaintiff complied with the statutorily mandated procedural requirements, this Court would not exercise supplement jurisdiction over any remaining state law claim for two reasons. First, the Tenth Circuit expressed a strong preference for trial courts to decline the exercise of supplemental jurisdiction when all federal claims have been dismissed. *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed

---

[2] Due to Plaintiff's failure to satisfy the subjective component, the Court will not address the objective component of deliberate indifference.

before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'") (quotation omitted). Second, "[t]he Court concludes that any potential delay or duplication resulting from a dismissal without prejudice does not constitute a compelling reason to retain jurisdiction." *U.S. v. Ledford*, No. 10-cv-01351-PAB-MEH, 2012 WL 1079552, at *3 (D. Colo. Mar. 30, 2012); *see also Hamilton v. Upper Crust, Inc.*, No. 10-CV-0718-CVE-PJC, 2011 WL 3880932, at *10 (N.D. Okla. Sep. 2, 2011) ("The Court finds that the Tenth Circuit's expressed preference for declining pendent jurisdiction outweighs the parties' slight interest in preventing delay.").

### III. No Leave to Amend

Finding that Plaintiff has unsuccessfully pleaded his claims, the Court must determine whether to recommend outright dismissal or permit Plaintiff to amend the SAC. In cases involving pro se litigants, the Tenth Circuit has found that courts should dismiss with leave to amend when there is a possibility that the litigant can correct the defect in the pleading. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). Dismissal without prejudice is preferable where the deficiencies are "likely the result of an untutored pro se litigant's ignorance of special pleading requirements." *Id*. It is notable, however, that these litigants "are not insulated from the rule that dismissal with prejudice is proper for failure to state a claim." *Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014). This is especially true where the litigant cannot succeed on the alleged facts. *Id*.

Plaintiff has amended his complaint twice. Despite the numerous allegations in the SAC and his multiple responses, Plaintiff failed in plausibly alleging his claims. There is little reason to believe that Plaintiff would be successful on a future amendment. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("We have stated that '[d]ismissal of a pro se complaint for failure

11

to state a claim is proper only where . . . it would be futile to give him an opportunity to amend.'" (quoting *Perkins*, *v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)). As such, the Court recommends Plaintiff's claims against Defendants be dismissed with prejudice.

## CONCLUSION

Accordingly, the Court respectfully recommends granting Defendants' Motion [filed June 9, 2022; ECF 58]. The claims against Defendants should be dismissed with prejudice.[3]

Respectfully submitted this 12th day of July, 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[3] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).